UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
THE ANNUITY, WELFARE and APPRENTICESHIP SKILL
IMPROVEMENT & SAFETY FUNDS of the
INTERNATIONAL UNION OF OPERATING ENGINEERS,
LOCAL 15, 15A, 15C and 15D, AFL-CIO, by its TRUSTEES
JAMES T. CALLAHAN, ROBERT SHAW, RUSSELL
SHAW and CHRISTOPHER WARD, and JOHN and
JANE DOE, as Beneficiaries of the ANNUITY, WELFARE and
APPRENTICESHIP SKILL IMPROVEMENT & SAFETY
FUNDS of the INTERNATIONAL UNION OF OPERATING
ENGINEERS, LOCAL 15, 15A, 15C and 15D, AFL-CIO,

**AFFIDAVIT IN
SUPPORT OF
DEFAULT JUDGMENT**

08-CIV-2935 (IBC)

Plaintiffs,

-against-

METRO FOUNDATION CONTRACTORS, INC.,

Defendant.
-------------------------------------------------------------------------------X

JAMES M. STEINBERG, being duly sworn, deposes and says:

1.      I am a member of the law firm of BRADY McGUIRE & STEINBERG, P.C.,

attorneys for the Plaintiffs in the above-entitled action and am fully familiar with all the facts and

circumstances of this action.

2.      I make this affidavit pursuant to Rules 55.1 and 55.2(a) of the Civil Rules for the

Southern District of New York in support of the Plaintiffs' application for the entry of a default

judgment against Defendant METRO FOUNDATION CONTRACTORS, INC.

3.      This is an action arising under the Employee Retirement Income Security Act of

1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA") to compel the Defendant's acquiescence

to a payroll audit for the period of August 8, 2007 through April 30, 2008 for the purpose of

determining whether all fringe benefit contributions have been paid to the Plaintiffs and to

recover any delinquent fringe benefit contributions owed as calculated in the report to be issued

after the audit is completed to the ANNUITY, WELFARE and APPRENTICESHIP SKILL

IMPROVEMENT & SAFETY FUNDS of the INTERNATIONAL UNION OF OPERATING

ENGINEERS, LOCAL 15, 15A, 15C and 15D, AFL-CIO (the "LOCAL 15 FRINGE BENEFIT

FUNDS").

     4.     The subject matter jurisdiction of this Court is invoked pursuant to Sections 502

and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145.

     5.     This action was commenced on March 20, 2008 by the filing of the Summons and

Complaint. A copy of the Summons and Complaint was personally served on the Defendant

METRO FOUNDATION CONTRACTORS, INC. on April 9, 2008, by a Process Server who

personally served Donna Christie, an Authorized Agent in the Office of the Secretary of State of

the State of New York. Proof of said service was filed with the court on April 18, 2008 via the

ECF System. (A copy of the Summons and Complaint, along with the Proof of Service are

annexed hereto as Exhibit "A".)

     6.     As a signatory to a collective bargaining agreement with LOCAL 15 dated August

8, 2007 (a copy of which is annexed hereto as Exhibit "B"), Defendant METRO FOUNDATION

CONTRACTORS, INC. agreed to be bound to all agreements and declarations of trust,

amendments and regulations, thereto, and to remit all contributions in accordance with the

procedures established by the LOCAL 15 FRINGE BENEFIT FUNDS. (A sample copy of a

Local 15 Trust Agreement is annexed hereto as Exhibit "C").

     7.     As a signatory to a collective bargaining agreement with LOCAL 15, Defendant

METRO FOUNDATION CONTRACTORS, INC. is required to make contributions to the

Plaintiff Trust Funds on behalf of all LOCAL 15 members in its employee. For the period of

August 8, 2007 through April 30, 2008, the Plaintiffs have been unable to independently verify whether the LOCAL 15 members in the Defendant's employ received the proper fringe benefit contributions. As such, the only basis for determining whether the correct fringe benefit contribution payments were made by the Defendant for the period in question is to perform an audit of the corporate records of Defendant METRO FOUNDATION CONTRACTORS, INC.

    8.    In accordance with the applicable Trust Agreements and the Collection & Audit Procedures established by the Board of Trustees (a copy of which are annexed hereto as Exhibit "D"), the LOCAL 15 FRINGE BENEFIT FUNDS were and continue to be authorized to have their representative examine the books and records of the Defendant to determine whether the said Defendant has made the proper contributions to said Plaintiff Trust Funds. (See Exhibit "D at Sections I and IV; along with Exhibit "C" at Annuity Trust Fund Agreement, Article V, Section 5.) As such, Defendant METRO FOUNDATION CONTRACTORS, INC. is required to cooperate in the performance of said audit on a date to be set by this Court and to make the following documents available for review by the Plaintiffs' auditor for the period of August 8, 2007 through April 30, 2008:

    a.    Tax Forms 941s;
    b.    Quarterly Payroll Tax Forms a/k/a NYS-45 Tax Forms;
    c.    Corporate Payroll Records (including information identifying hours paid and gross wages); and
    d.    Cash Disbursements Records.
    e.    Tax Forms W-2s;
    f.    Payroll Reports (provided to the union or fund office, if applicable); and
    g.    Canceled Checks.

    9.    In the event that said audit is conducted and a fringe benefit deficiency is calculated, Defendant METRO FOUNDATION CONTRACTORS, INC. should be required to pay the following damages within thirty (30) days of receipt of written notice of said deficiency:

       a.    The amount of the calculated deficiency pursuant to Section $502(g)(2)(A)$ of the Employee Retirement Income Security Act of 1974, 29 U.S.C. Section 1001 *et seq.* ("ERISA");

       b.    Interest calculated on the deficiency balance at the plan rate of 6.25% (one percent over the prime rate of 5.25%) in accordance with the rate of interest called for in the underlying Collection & Audit Procedures pursuant to Section $502(g)(2)(B)$ of ERISA;

       c.    Statutory damages calculated on the deficiency balance at the plan rate of 6.25% (one percent over the prime rate of 5.25%) in accordance with the rate of interest called for in the underlying Collection & Audit Procedures pursuant to Section $502(g)(2)(C)(i)$ of ERISA; and

       d.    The cost of the audit pursuant to Section $502(g)(2)(E)$ of ERISA since the Trust Agreements and Collection & Audit Procedures are silent as to the reimbursement to the Funds for these expenses.

    10.    In addition hereto, the following damages should be awarded against the

Defendant and in favor of the Plaintiffs, regardless of whether the audit is actually ever

conducted:

       a.    Attorneys' fees in the amount of $1,638.75 which are detailed hereafter and authorized pursuant to Section $502(g)(2)(D)$ of ERISA; and

       b.    The costs expended by the Plaintiffs to date in connection with this litigation in the amount of $460.00 which are also detailed in the accompanying Statement of Damages and authorized pursuant to Section $502(g)(2)(E)$ of ERISA.

    11.    The disbursements sought to be taxed have been made in this action or will

necessarily be made incurred herein.

    12.    The sum of $1,638.75 represents my law firm's charges to the client, the LOCAL

15 FRINGE BENEFIT FUNDS, for legal services in connection with this litigation. My services

are billed at $285.00 per hour.

    13.    On daily time sheets we detail the specific services we perform on behalf of the

client which includes: the date of an activity; the specific activity or activities engaged in; the

initials identifying the person that performed the work; and the amount of time expended. This information is thereafter maintained by the law firm in its permanent records and transferred to monthly billing invoices sent to the client. (Annexed hereto as Exhibit "E" is a synopsis of the legal services performed on behalf of this client).

14.     I have reviewed Exhibit "E" and it accurately reflects the expenditure of my time in this case. In fact, the total number of hours expended by me on behalf of the Plaintiffs is recorded on Exhibit "E" for which compensation is sought as follows: James M. Steinberg ("JMS")—5.75 hours.

15.     A lodestar amount, if calculated by multiplying the number of hours reasonably expended by the aforementioned hourly rate, would result in a fee as follows:  James M. Steinberg, 5.75 hours *times* $285.00 = $1,638.75.

16.     I hereby submit that the services for which we seek compensation were reasonable and necessary under the circumstances. I further submit that these attorneys' fees may be awarded by the Court in the sound exercise of its discretion in light of the following factors:

> (a)     The fact that attorneys' fees may be awarded pursuant to ERISA, 29 U.S.C. Section 1132(g)(2)(D);
>
> (b)     The Defendant's clear and inexcusable culpability in this matter;
>
> (c)     The amount to be paid in attorneys' fees is reasonable;
>
> (d)     The fact that it would be grossly inequitable to require the Plaintiffs to absorb the cost of Defendant's clear and intentional disregard of its contractual and legal responsibilities; and
>
> (e)     The fact that an award of attorneys' fees will underline the seriousness of offenses against ERISA Funds and prove a deterrent to delinquencies on the part of this and other employers in the future.

17.     The relief sought herein has not previously been requested.

**WHEREFORE**, the Plaintiffs request the entry of Default and the entry of the annexed

Judgment against Defendant METRO FOUNDATION CONTRACTORS, INC.

JAMES M. STEINBERG (JS-3515)

Sworn to before me this
30th day of April, 2008

Notary Public

DEANA GRABOWSKI
Notary Public, State of New York
No. 01GR6120849
Qualified in Westchester County
Commission Expires December 27, 2008

EXHIBIT "A"

JUDGE SCHEIN LIN

# United States District Court

| SOUTHERN | DISTRICT OF | NEW YORK |

The Annuity, Welfare and Apprenticeship Skill
Improvement & Safety Funds of the International
Union of Operating Engineers Local 15, 15A, 15C
& 15D, AFL-CIO et al.

### SUMMONS IN A CIVIL CASE

V.

Metro Foundation Contractors, Inc.

CASE NUMBER:

08 CIV 2935

TO: (Name and address of defendant)

Metro Foundation Contractors, Inc.
144-45 156th Street, 2nd Floor
Jamaica, New York 11434

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

BRADY McGUIRE & STEINBERG, P.C.
603 WARBURTON AVENUE
HASTINGS-ON-HUDSON, NEW YORK 10706

an answer to the complaint which is herewith served upon you, within _____ Twenty (20) _____ days after service of this
summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period
of time after service.

J. MICHAEL McMAHON

MAR 2 0 2008

CLERK

DATE

(BY) DEPUTY CLERK

United States District Court
Southern Distirict of New York

The Annuity, Welfare and Apprenticeship Skill Improvement &
Safety Funds of the International Union of Operating
Engineers Local 15, 15A, 15C & 15D, AFL-CIO et al.,

AFFIDAVIT OF SERVICE

                                    Plaintiff(s)

Case No.  08 CV 02935

            -against-

Metro Foundation Contractors, Inc.,

                          Defendant(s)

State of New York )
                              ss:
County of Albany )

Mary M. Bonville, being duly sworn, deposes and says:

Deponent is over the age of eighteen and is a resident of New York State and is not a party to this action.  That
on April 9, 2008 at approximately 3:45 PM deponent served the following specific papers  pursuant to Section
306 of the Business Corporation Law,  Summons in a Civil Action and Complaint, that the party served was
Metro Foundation Contractors Inc., a domestic business corporation, the defendant in this action,  by personally
serving two copies of the aforesaid papers at the office of the NYS Secretary of State located at 99 Washington
Avenue, 6th Floor, in the City of Albany, New York by delivering to and leaving papers with Donna Christie, a
white female with blonde hair, being approximately 36-45 years of age; height of 5'0" - 5'3", weight of 130-160
lbs., being an authorized person in the Corporation Division of the Department of State and empowered to
receive such service.  That at the time of making such service, deponent paid the fee prescribed by Law in the
amount of $40.00.

                                                        _Mary M. Bonville_
                                                              Mary M. Bonville

Sworn to before me this ___9th___ day of April, 2008

_Ruth A. Dennehey_

Ruth A. Dennehey
Notary Public — State of New York
Qualified in Albany County
Registration No. 01DE4729775
Commission Expires: 11-30-2010

**Service of Process:**

1:08-cv-02935-IBC The Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the International Unio of Operating Engineers, Local 15,15A,15C and 15D, AFL-CIO v. Metro Foundation Contractors, Inc.

ECF

U.S. District Court

**United States District Court for the Southern District of New York**

**Notice of Electronic Filing**

The following transaction was entered by Steinberg, James on 4/18/2008 at 12:55 PM EDT and filed on 4/18/2008

| | |
|---|---|
| **Case Name:** | The Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the International Unio of Operating Engineers, Local 15,15A,15C and 15D, AFL-CIO v. Metro Foundation Contractors, Inc. |
| **Case Number:** | 1:08-cv-2935 |
| **Filer:** | The Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the International Unio of Operating Engineers, Local 15,15A,15C and 15D, AFL-CIO |
| **Document Number:** | 3 |

**Docket Text:**
**AFFIDAVIT OF SERVICE. Metro Foundation Contractors, Inc. served on 4/9/2008, answer due 4/29/2008. Service was accepted by Donna Christie, an authorized agent in the Corporation Division of the N.Y.S. Department of State. Document filed by The Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the International Unio of Operating Engineers, Local 15,15A,15C and 15D, AFL-CIO. (Steinberg, James)**

**1:08-cv-2935 Notice has been electronically mailed to:**

James Michael Steinberg     james.steinberg4@verizon.net

**1:08-cv-2935 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1008691343 [Date=4/18/2008] [FileNumber=4496644-0
] [7817e96e82c0dd699471da4b5c8775c7bfa1050b2e35b692c677fd16177c999117a
14c481303ebb4ebaf1da6fbf230abe56ea8978eace5a3c4effd3a4e8096dd]]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

08 CV 02935

--------------------------------------------------------------x

THE ANNUITY, WELFARE and APPRENTICESHIP SKILL
IMPROVEMENT & SAFETY FUNDS of the
INTERNATIONAL UNION OF OPERATING ENGINEERS,
LOCAL 15, 15A, 15C and 15D, AFL-CIO, by its TRUSTEES
JAMES T. CALLAHAN, ROBERT SHAW, RUSSELL
SHAW and CHRISTOPHER WARD, and JOHN and
JANE DOE, as Beneficiaries of the ANNUITY, WELFARE and
APPRENTICESHIP SKILL IMPROVEMENT & SAFETY
FUNDS of the INTERNATIONAL UNION OF OPERATING
ENGINEERS, LOCAL 15, 15A, 15C and 15D, AFL-CIO,

**COMPLAINT**



Plaintiffs,

-against-

METRO FOUNDATION CONTRACTORS, INC.,

Defendant.

--------------------------------------------------------------X

Plaintiffs, by their attorneys, BRADY McGUIRE & STEINBERG, P.C., for their

Complaint, respectfully allege:

1.       This is an action arising under the Employee Retirement Income Security Act of

1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA") to compel an audit of corporate records

and to recover any delinquent contributions owed to employee fringe benefit trust funds.

### JURISDICTION

2.       The subject matter jurisdiction of this Court is invoked pursuant to Sections 502

and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145.

3.       Venue is properly laid in the Southern District of New York pursuant to Section

502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), in that, as shown below, the INTERNATIONAL

UNION OF OPERATING ENGINEERS, LOCAL 15, 15A, 15C and 15D, AFL-CIO ("LOCAL

15") maintains its principal office in the County of New York and the subject Funds are administered in the County of New York, State of New York.

## THE PARTIES

4.    The LOCAL 15 ANNUITY, WELFARE, APPRENTICESHIP SKILL IMPROVEMENT AND SAFETY FUNDS (hereinafter collectively referred to as the "LOCAL 15 TRUST FUNDS") are joint trustee funds established by various trust indentures pursuant to Section 302 of the LMRA, 29 U.S.C. § 186. The Trustees of the LOCAL 15 TRUST FUNDS maintain the subject plans at offices located at 265 West 14th Street, New York, New York 10011.

5.    JAMES T. CALLAHAN, ROBERT SHAW, RUSSELL SHAW and CHRISTOPHER WARD are Trustees of the LOCAL 15 ANNUITY, WELFARE and APPRENTICESHIP SKILL IMPROVEMENT & SAFETY FUNDS and are "fiduciaries" within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21).

6.    The LOCAL 15 TRUST FUNDS also operate as the administrative representative of the Central Pension Fund of the International Union of Operating Engineers responsible for the collection of defined pension benefit contributions owed by entities maintaining collective bargaining agreements with LOCAL 15.

7.    The LOCAL 15 ANNUITY FUND is an employee pension benefit plan within the meaning of Section 3(2) of the ERISA, as amended, 29 U.S.C. § 1002(2), established for the purpose of providing retirement income to employees.

8.    The LOCAL 15 WELFARE and APPRENTICESHIP SKILL IMPROVEMENT & SAFETY FUNDS, are employee welfare benefit plans within the meaning of Section 3(1) of

ERISA, 29 U.S.C. § 1002(1), established for the purpose of providing medical, vacation and other benefits to the employees of contributing employers.

9. JOHN and JANE DOE are beneficiaries of the LOCAL 15 TRUST FUNDS within the meaning of Section 3(8) of ERISA, 29 U.S.C. § 1002(8).

10. The LOCAL 15 TRUST FUNDS constitute multi-employer/employee benefit plans within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §§ 1002(3) and (37).

11. Upon information and belief, Defendant, METRO FOUNDATION CONTRACTORS, INC. ("METRO FOUNDATION") was and still is a New York corporation, with its principal place of business located at 144-45 156th Street, 2nd Floor, Jamaica, New York 11434.

12. Upon information and belief, METRO FOUNDATION was and still is a foreign corporation duly licensed to do business in the State of New York.

13. Upon information and belief, METRO FOUNDATION was and still is a foreign corporation doing business in the State of New York.

14. Upon information and belief, METRO FOUNDATION is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5).

## AS AND FOR A FIRST CAUSE OF ACTION

15. Plaintiffs repeat and reallege each and every paragraph of the Complaint numbered 1 through 14 inclusive, with the same force and effect as though more fully set forth at length herein.

16. At all relevant times, METRO FOUNDATION agreed to be bound by the terms and conditions of a collective bargaining agreement with LOCAL 15 dated August 20, 2007 (hereinafter the "Collective Bargaining Agreement").

17.    LOCAL 15 is a labor organization as defined in Section 2 of the LMRA, 29

U.S.C. § 152 et seq., having its principal office for the transaction of business at 265 West 14th

Street, New York, New York 10011.

18.    Under the terms of the Collective Bargaining Agreement, ERISA and the Trust

Agreements for the LOCAL 15 TRUST FUNDS, an employer is required to make payments to

the LOCAL 15 TRUST FUNDS based upon an agreed sum or percentage for each employee

hour of its hourly payroll worked or wages paid, and to report such employee hours and wages to

the LOCAL 15 TRUST FUNDS.

19.    Pursuant to the terms of the Trust Agreements establishing the LOCAL 15

TRUST FUNDS along with ERISA, Plaintiffs are entitled to audit METRO FOUNDATION'S

books and records.

20.    In pertinent part, the Trust Indentures establishing the LOCAL 15 TRUST

FUNDS state:

> Each Employer shall promptly furnish to the Trustees on demand any and all wage
> records relating to his Employees which the Trustees shall require in writing.
>
> The Trustees, or their authorized representatives, may examine the pertinent
> books and records of each Employer whenever such examination may be deemed
> necessary or advisable by the Trustees in connection with the proper
> administration of the [Funds].

21.    Upon information and belief, Defendant METRO FOUNDATION may have

underreported the number of employees, the amount of employee hours and wages paid to its

employees and the contributions due.

22.    Although the Plaintiffs formally requested said audit from Defendant METRO

FOUNDATION on two previous occasions, to date, said Defendant has refused to schedule said

audit and therefore Plaintiffs demand an audit of METRO FOUNDATION'S books and records

for the period commencing with the Defendant's obligations under the terms and conditions of the Collective Bargaining Agreement through Present.

## AS AND FOR A SECOND CAUSE OF ACTION

23.     Plaintiffs repeat and reallege each and every paragraph of the Complaint numbered 1 through 22 inclusive, with the same force and effect as though more fully set forth at length herein.

24.     Upon information and belief, METRO FOUNDATION has failed to make the contractually required fringe benefit contributions to the LOCAL 15 TRUST FUNDS in the approximate amount of $50,000.00 in violation of Section 515 of ERISA, 29 U.S.C. § 1145 which requires that employers pay fringe benefit contributions in accordance with the terms and conditions of the applicable collective bargaining agreement. The precise figure cannot be determined because the Defendant may not have filed accurate employment reports for those months in which it was required to make contributions as required by the Collective Bargaining Agreement and Section 209 of ERISA, 29 U.S.C. § 1059.

25.     Despite repeated efforts by the LOCAL 15 TRUST FUNDS to collect the contributions owed, METRO FOUNDATION remains delinquent in making the proper contributions and has failed to pay any portion of the outstanding contributions to the LOCAL 15 TRUST FUNDS as detailed above.

26.     Section 502 of ERISA, 29 U.S.C. § 1132 provides that upon a finding of an employer's violation of Section 515 of ERISA, 29 U.S.C. § 1145, the Court shall award to the Plaintiff Trust Funds: (a) the amount owed in unpaid fringe benefit contributions; together with (b) interest on the unpaid contributions computed at the rate provided for under the Plaintiff Trust Fund's Plan, or if none, at the rate set forth in the United States Internal Revenue Code at

26 U.S.C. § 6621; (c) statutory damages; (d) reasonable attorneys' fees; and (e) the costs and disbursements of the action.

27.    Accordingly, as a direct and proximate result of METRO FOUNDATION'S defaults, omissions and breaches of the Collective Bargaining Agreement and Section 515 of ERISA, Defendant METRO FOUNDATION is liable to the Plaintiffs in the amount of no less than $50,000.00 along with potentially additional contributions for the subsequent period not covered by the audit, together with accumulated interest on the unpaid and/or untimely paid principal amount due and owing, statutory damages, reasonable attorneys' fees, and the costs and disbursements incurred in this action pursuant to Section 502 of ERISA, 29 U.S.C. § 1132.

**WHEREFORE**, Plaintiffs demand judgment on the First Cause of Action as follows:

1.    An order requiring Defendant METRO FOUNDATION CONTRACTORS, INC. to submit all books and records to Plaintiffs for audit at its cost in accordance with Section 502(g)(2)(E) of ERISA, 29 U.S.C. § 1132(g)(2)(E).

**WHEREFORE**, Plaintiffs demand judgment on the Second Cause of Action as follows:

1.    Of Defendant METRO FOUNDATION CONTRACTORS, INC., in the amount of contributions determined to be due and owing to the LOCAL 15 TRUST FUNDS of $50,000.00, plus any additional monies that may be determined to become justly due and owing to the Plaintiffs during the pendency of this action and before final judgment, together with:

a.    Prejudgment interest, computed at the plan rate or the applicable United States Treasury rate from the date on which the first payment was due on the total amount owed by Defendants, in accordance with Section 502(g)(2)(B) of ERISA, 29 U.S.C. § 1132(g)(2)(B);

b.    Statutory damages in accordance with Section 502(g)(2)(C) of ERISA, 29 U.S.C. § 1132(g)(2)(C);

      c.     Attorneys' fees, costs and disbursements in accordance with Section

502(g)(2)(D) of ERISA, 29 U.S.C. § 1132(g)(2)(D); and

      d.     Such other and further relief as the Court may deem just and proper in

accordance with Section 502(g)(2)(E) of ERISA, 29 U.S.C. § 1132(g)(2)(E).

Dated:  Hastings-on-Hudson, New York
        March 20, 2008

                Yours, etc.

                BRADY McGUIRE & STEINBERG, P.C.

By:     James M. Steinberg (JS-3515)
        Attorneys for Plaintiffs
        603 Warburton Avenue
        Hastings-on-Hudson, New York 10706
        (914) 478-4293

EXHIBIT "B"

05/04/2008
Aug 20 07 11:16a    Local 14 IUOE    (  `1939-3131    p. 1
08/20/2007 10:47    2121 137    5 5 F    PAGE 03/04
Aug 08 07 12:54p    Local 14 IUOE    (718)933-3131

Agreement, effective this _____ day of _____ , 20_____ by and between Local Union 14-14B and Local Union 15, 15A,15C and 15D, International Union of Operation Engineers. AFL-CIO ("the UNION") and _____ Metro Foundation Contractors_____
_____ ("the EMPLOYER").

WHEREAS, the parties hereto acknowledge that there are presently Collective Bargaining Agreements between the Union and the Cement League, the General Contractors Association of New York, the Contractors Association of Greater New York, the Building Contractors Association, Allied Building Metal Industries, Inc., Association of Concrete Contractors of New York, Inc., the Construction Industry Council of Westchester and Hudson Valley, the Associated Brick Mason Contractors of Greater New York, the Association of New York City Concrete Producers, Inc and the Asbestos Abatement Contractors Association. In addition, the EMPLOYER recognizes there are or will be certain amendments, extensions and renewals to the various Association Agreements (hereinafter referred to as the "Association Collective Bargaining Agreements") to be negotiated on behalf of the Employer by the various Employer Associations; and WHEREAS, the Employer Acknowledges receipt of a copy of each of the Association Collective Bargaining Agreement; and WHEREAS, the Employer performs work from time to time which is covered by all or some of the above-mentioned Agreements and recognizes the Union as a source for the procurement of skilled workmen for the work described in the applicable Association Collective Bargaining Agreement.

NOW, THEREFORE, the parties agree as follows:

1.    The Employer is bound to all of the terms and conditions as are applicable from time to time by the nature of the work performed for each of the Association Collective Bargaining Agreements which are incorporated herein by reference as if fully set forth in this Agreement, except as specifically set forth hereinafter in paragraphs "2" and "3".

2.    The grievance and arbitration procedure described in each Association Collective Bargaining Agreement, shall not apply in this Agreement and the procedures shall be as follows:

Any complaint, dispute or difference arising out of this Agreement shall be referred to the Union Business Agent and a representative of the Employer for a job site meeting within three (3) days notice to them of the occurrence giving rise to such complaint, dispute or difference. If the matter is not resolved within seven (7) days of such meeting, then the aggrieved party may submit the matter for arbitration to one (1) of the two (2) arbitrators named hereinafter. These arbitrators shall be Ben Falcigno and John Crotty.

3.    The Employer agrees that the operation of Scissor-Lift Trucks is the jurisdiction of the Operating Engineers. Scissor-Lift Trucks used solely as scaffolds or welding platforms will not be manned by an Operating Engineer. Scissor-Lift Trucks used for hoisting any material will be manned by an Operating Engineer. Occasional use of a Scissor-Lift Truck is the jurisdiction of the Operating Engineers, and the computation of the time used as a hoisting machine will be agreed upon by both the Employer and the Business Agent.

4.    The parties further agree to be bound to all the agreements and declarations of trusts, amendments and regulations, thereto, referenced in the applicable Association Collective Bargaining Agreements and to remit all contributions as set forth under the applicable Association Collective Bargaining Agreements and all amendments, renewals and/or extensions thereto, as adopted by the aforesaid Association and the aforesaid Local Union or their designated trustees.

ANY FUTURE ORDER OF FRINGE BENEFIT STAMPS MUST BE MADE BY CERTIFIED CHECK

5.   The Employer agrees to be responsible for the payment of fringe benefit contributions on the stamps reported for each of the three (3) reporting periods which occur every year in March, July and November. Further, the Employer agrees that for every period in which an individual is reported as being employed as an Operating Engineer, the Employer shall be responsible for the payment of fringe benefit contributions for a minimum of forty (40) hours per week for every week in such period. This requirement shall apply to any and all individuals employed as Operating Engineers for any length of time during any given period, regardless of whether they are also employed by the Employer during such period in some other capacity and/or hold a different title with said Employer's company, including but not limited to owner, shareholder, officer, director, etc.

6.   The Employer agrees that the applicable Association shall, on behalf of the Employer, negotiate successor Collective Bargaining Agreements, amendments, renewals and extensions of the applicable Collective Bargaining Agreements and the Employer agrees to be bound by any and all amendments, renewals and/or extensions of the above referenced Association Collective Bargaining Agreements unless and until this Agreement is properly terminated by either the Employer or the Union in accordance with the renewal and/or Termination Provisions of the applicable Association Collective Bargaining Agreements.

IN WITNESS WHEREOF, the parties have caused this agreement to be executed by their duly authorized representatives.

Edwin L. Christian
President and Business Manager
International Union of Operating Engineers,
Local 14-14B

Christopher T. Confrey
Recording Corresponding Secretary
International Union of Operating Engineers,
Local 14-14B

James T. Callahan
President and Business Manager
International Union of Operating Engineers,
Local 15, 15A, 15C and 15D

Brian S. Kelly
Recording Corresponding Secretary
International Union of Operating Engineers,
Local 15, 15A, 15C and 15D

Metro Foundation Contractors
Company Name

144-45 156th St., 2nd Floor
Address

Jamaica, NY 11434
City, State, Zip Code

917-440-2680
Telephone Number

718-525-1661
Fax Number

Signature of Officer(s)

Anthony Lazzaro - President
Name and Title of Officer(s)
(PLEASE PRINT)

**ANY FUTURE ORDER OF FRINGE BENEFIT STAMPS MUST BE MADE BY CERTIFIED CHECK**

EXHIBIT "C"

Section 6.  The term "Annuity Plan" as used herein means the plan, program, method and procedure for the making of regular contributions by Employers, and the payment by the Trustees of benefits from the Annuity Fund, in accordance with such rules and regulations relating to eligibility requirements, retirement, age, amount and computation of benefits and the general administration and operation of the Annuity Fund as the Trustees may from time to time adopt and promulgate.

Section 7.  The term "Contributions" as used herein shall mean the payments required to be made to the Annuity Fund by the Employers.

ARTICLE II

NAME

There shall be established a Trust Fund to be known as the ANNUITY FUND OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL UNIONS 15, 15A, 15C, 15D, AFL-CIO.

ARTICLE III

PURPOSES

The purposes of the Trust Fund shall be to provide, pursuant to the Annuity Plan to be formulated and adopted by the Trustees various benefits now or hereafter provided for in the plan or any amendments thereof for the benefit of employees eligible thereto hereunder.

ARTICLE IV

APPROVAL OF GOVERNMENTAL AGENCIES

The Annuity Plan shall be submitted for approval under the applicable provisions of the Internal Revenue Code.  In the event of failure of Annuity Plan and Agreement and Declaration of Trust to receive or retain approval as a qualified Annuity Plan and Agreement and Declaration of Trust under said provisions of the Internal Revenue Code, or any other applicable provisions of Federal Law as now in effect, or as subsequently amended or legislated, or if such approval, or any ruling in connection therewith shall result in the Employers' contribution constituting taxable income to employees, or the Employers not being entitled to claim a deduction of such contributions for income tax purposes, the

-4-

Trustees shall make such changes as are necessary to receive or retain such approval or authority for Employers to deduct payments to the Annuity Trust without reporting such payments as taxable income to Employees.  It is intended, however, that in any event an Annuity Plan shall be established and should any dispute arise among the Trustees because of the said approval or any ruling in connection therewith, or failure to secure such approval, then a deadlock shall be deemed to exist and an umpire shall be designated as provided in Article X, Section 9, to decide such dispute, giving prima consideration to the intent set forth herein.

ARTICLE V

CONTRIBUTIONS TO THE ANNUITY FUND

Section 1.  Commencing with July 1, 1977 the Employers shall contribute the sum provided for in the Collective Bargaining Agreements for all of the employees within the coverage of the said collective bargaining agreements, with the exception of employers employing members or persons covered under the collective bargaining agreement with Local 15C; contributions for employees covered under collective bargaining agreements with Local 15C shall commence on October 9, 1977 with payment by separate check.

Section 2.  The Trustees may compel and enforce the payment of the contributions in any manner which they may deem proper; and the Trustees may make such additional rules and regulations to facilitate and enforce the collection and payment thereof as they may deem appropriate.

Section 3.  Employer contributions shall become due on the payroll date and be reported and paid weekly.  The failure of the Employer to pay the contributions required hereunder within ten (10) days after the date due shall be a violation of the collective bargaining agreement between the said Employer and the Union as well as a violation of the Employer's obligations hereunder.  Non-payment by an Employer of any contributions when due shall not relieve any other Employer from his obligation to make payments.

-5-

Section 4.  Each Employer shall promptly furnish to the Trustees on demand any and all wage records relating to his Employees which the Trustees shall require.  Each Employer shall also render to the Trustees with the payment of such contributions, or at such other regular intervals as the Trustees may request, written reports as to the wages paid to and hours worked by his Employees, other payroll data such as social security numbers, and the contributions due or payable to the Annuity Fund, as the Trustees may require.

Section 5.  The Trustees, or their authorized representatives, may examine the pertinent books and records of each Employer whenever such examination may be deemed necessary or advisable by the Trustees in connection with the proper administration of the Annuity Fund.

ARTICLE VI

POWERS AND DUTIES OF THE TRUSTEES, EXPENSES
AND FEES

Section 1.  The Trustees shall, among other things, without limiting the generality of the express or implied powers of the Trustees:

(a)  Accept and receive all contributions and shall hold, invest, reinvest, manage and administer the same as part of the Annuity Fund for the uses, purposes and trusts herein provided.

(b)  Accumulate all income, earnings and profits of the Annuity Fund and receive and administer the same as a part thereof.

(c)  Formulate, adopt and administer an Annuity Plan for the exclusive benefit of the Employees in order to provide retirement and other benefits for Employees.

(d)  Promulgate and establish rules and regulations for the administration and operation of the Annuity Plan in order to effectuate the purposes thereof; and in pursuance thereto (but without limitation on the powers of the Trustees by reason of such enumeration), formulate and establish the conditions of eligibility with respect to age and length of service, qualifications for retirement including early retirement, conditions for vesting prior to normal retirement date, past and future service benefit credits, the method of providing benefits, the payment of premiums in the event that insurance policies or annuity contracts are part of the

Annuity Plan, the purchase, handling, control and disposition of retirement income contracts, policies and annuities, the investment of funds and any and all other matters which the Trustees in their discretion, may deem necessary or proper to effectuate the purposes and intent of the Annuity Program.

(e)  Amend the Annuity Plan from time to time, provided that such amendments comply with the purposes hereof.  The Annuity Plan and all amendments thereto adopted by the Trustees shall be filed by the Trustees as part of the records and minutes of the Trustees, and a copy thereof shall be sent to the Union and the Employers.

(f)  Establish and accumulate as part of the Annuity Fund such reserve or reserves as the Trustees shall in their opinion deem necessary or advisable for the sound and efficient administration of the Annuity Plan.

(g)  Purchase, acquire, receive, retain, surrender, administer or assign any life insurance or annuity contract and pay the premiums, and exercise the rights, privileges, options and benefits contained in any such contract, in the event that the Trustees determine that insurance policies or annuity contracts shall be acquired as part of the Annuity Program.

(h)  Receive any securities or other property included within the term "Funds" hereunder that are tendered to them and that they may deem to be acceptable.

(i)  Pay out of the Trust Fund all real and personal property taxes of any nature whatsoever; provided, however, that the Trustees may contest the validity of any tax and may obtain the advice of counsel and for all and any acts done or omitted to be done pursuant to the advice of such counsel, the Trustees shall be held completely harmless.

(j)  Enter into agreements, contracts and other instruments for the deposit of funds with banks, trust companies or other institutions, which accept and hold money on deposit, and to authorize such depositary to act as custodian of the funds, whether in cash or securities or other property, and to authorize such depositary or depositaries to convert, invest and reinvest the funds, entirely or in part, into securities of any kind and nature whatsoever.

-7-

(k)  All checks, drafts, vouchers or other withdrawals of funds from the account of the trust fund shall be drawn and issued in accordance with the by-laws hereto annexed, but all withdrawals from the general fund shall require the signature of one (1) Union Trustee and one (1) Employer Trustee.  The Trustees shall, in accordance with the by-laws, provide for a special and/or administrative account in the name of the fund for the payment of all routine and ordinary bills and expenses necessary to maintain current operations of the Trust Fund from which they shall be permitted to withdraw on the signature of any two Trustees, any funds necessary to operate the normal needs and requirements of the Annuity Fund. However, the Secretary-Treasurer shall, at least once a month, report to the Trustees all sums deposited in or withdrawn from such special account and the manner and reasons for the disbursements.

(1)  In their discretion appoint a bank or a trust company whose principal office is located in the City and County of New York, to be designated as the "Corporate Trustee" or the "Custodial Trustee", and to enter into and execute a trust agreement with such bank or trust company to provide for the investment and reinvestment of the Trust Fund, with such other provisions incorporated therein as may be deemed desirable in the Trustees' sole discretion for the proper management of the Trust Fund and upon such execution to convey and transfer to the Corporate Trustee or Custodial Trustee any

-8-

part  of the Annuity Fund and without limit with respect to the powers which the Trustees may grant to the Corporate Trustee or Custodial Trustee in such Agreement.  The Trustees shall be forever released from any responsibility or liability with respect to any funds which they may convey to the "Corporate Trustee" or "Custodial Trustee".

(m)  The Trustees are empowered to allocate fiduciary responsibilities and various administrative duties to committees and sub-committees of the Board of Trustees, and they may delegate such responsibilities and duties to other individuals as they may deem appropriate or necessary in their sole discretion, and consistent with the provisions of the Employees Retirement Income Security Act of 1974.

(n)  The Trustees shall have exclusive authority and discretion to manage and control the assets of the Trust except to the extent that such authority to manage, acquire, or dispose of the assets of the plan is delegated to one or more investment managers in accordance with the following paragraph:

> The Trustees are hereby empowered to appoint an Investment Manager or Managers to manage, acquire, or dispose of any assets of the Fund.  Such an Investment Manager may or may not be designated a "Corporate Trustee" or "Corporate Agent".  An Investment Manager is any fiduciary who has been designated by the Trustees to manage, acquire or dispose of any assets of the Fund who is registered as an Investment Advisor under the Investment Advisors Act of 1940 or an insurance company qualified to perform services under the laws of more than one state, and who has acknowledged in writing that he is a fiduciary with respect to the Plan.

Section 2.  The Trustees shall have and maintain an office in the City and County of New York, which shall be deemed the situs of the Annuity Fund.  The Trustees may from time to time change the location of said office within the City and County of New York, but no change shall be effective until notice thereof shall have been given to the Union and the Employers.

-9-

Section 3.  Notices given to the Trustees, the Union, or any Employer hereunder shall, unless otherwise specified be sufficient if in writing and delivered to, or sent by postpaid first class mail or prepaid telegram.  Except as herein otherwise provided, distribution or delivery of any statement or document required hereunder to be made to the Trustees, Union or Employers shall be sufficient if delivered in person or if sent by postpaid first class mail.

Section 4.  In addition to all other rights, powers and prerogatives vested in them, the Trustees may:

(a)  Hold from time to time any or all of the Trust Fund in cash, uninvested and non-productive of interest or other income.

(b)  Sell, transfer, or dispose of any securities or other property at any time held by them for cash or on credit; and convert, or exchange any securities or other property at any time held by them for other securities or property which the Trustees may deem acceptable.  Any  such sale, transfer, disposition, conversion or exchange may be made publicly or by private arrangement.

(c)  Consent to the reorganization, consolidation, merger, dissolution, or readjustment of the finances of any corporation, company or association, any of the securities of which may at any time be held hereunder, exercise any option or options, make any agreement or subscription, pay any expenses, assessments or subscriptions in connection therewith and hold and retain any property acquired by means of the exercise of the powers expressed in this paragraph to the extent that it is acceptable to the Trustees.

(d)  Compromise, arbitrate, settle, adjust or release any suit or legal proceeding, claim, debt, damage or undertaking due or owing from or to the Trust Fund on such terms and conditions as the Trustees may deem advisable.

(e)  Register any securities or other property held in the Annuity Fund with or without the addition of words indicating that such securities or other property are held in a fiduciary capacity; and hold in bearer form any securities or other property held hereunder so that title thereto will pass by delivery, but the books and records of the Trustees shall show that all such investments are part of the Annuity Fund.

(f)  Lease or purchase such premises, materials, supplies and equipment, and employ and retain such legal counsel, investment counsel, administrative, accounting, actuarial, clerical, custodian and other assistants or employees as in their discretion the Trustees may deem necessary or appropriate and to pay their reasonable expenses and compensation out of the Trust Fund.

(g)  Vote in person or by proxy or otherwise upon securities held by the Trustees and to exercise by attorney or in any other manner any other rights of whatsoever nature pertaining to securities or any other property at any time held by them hereunder.

(h)  Make, execute and deliver as Trustees any and all instruments in writing necessary or proper for the effective exercise of any of the Trustees' powers as stated herein, or otherwise necessary to accomplish the purposes of the Annuity Fund and this Trust Agreement.

(i)  Borrow money from any and all types of persons, companies or institutions upon such terms and conditions as the Trustees may deem desirable and for the sums so borrowed or advanced, the Trustees may issue promissory notes or other evidence of indebtedness as Trustees, and secure the repayment thereof by the pledge of any securities or other property in their possession as Trustees.

(j)  Apply to the United States District Court for the Southern District with respect to the disposition of any disputes which may arise among the Trustees and be unresolved among them or with respect to the disposition of the Annuity Fund if there shall be a dispute and no resolution concerning the same; or submit by mutual agreement to impartial arbitration for an award and determination any of the foregoing disputes if they be unresolved; but nothing herein contained shall be construed as imposing any duty on the Trustees to make such application, or as a limitation of any kind or nature upon the powers, rights and prerogatives of the Trustees.

(k)  Authorize by resolution any one or more of the Trustees to execute any notice or other  instrument in writing and all persons, partnerships, corporations or associations may rely thereupon that each notice or instrument has been duly authorized and is binding on the Annuity Trust and the Trustees.

-11-

(1) Provide, under this Agreement and Declaration of Trust and under any plan thereafter promulgated, for employees or officials connected with and/or members of the Union for whom the Union will make contributions, subject at all times to the irrevievable discretion of the Trustees as to coverage, amount of contributions and any and all other things or matters pertaining thereto.

(m) Do all other acts, and take any and all other action, whether or not expressly authorized herein, which the Trustees may deem necessary or proper for the protection of the property held hereunder.

Section 5. The expenses incurred in the collection of contributions and in the administration and operation of the Annuity Fund shall be paid from the Annuity Fund. No Trustee shall receive any compensation for the services rendered by him.

### ARTICLE VII

#### ACCOUNTS, RECORDS AND AUDITING THEREOF

Section 1. All income, profits, recoveries, contributions, forfeitures and any and all moneys, securities and properties of any kind at any time received or held by the Trustees hereunder shall be held for the uses and purposes hereof.

Section 2. The Trustees shall keep true and accurate books of accounts and records of all their transactions, which shall be open to the inspection of each of the Trustees at all times, and which shall be audited semi-annually by a certified public accountant selected by the Trustees. A condensed statement of such audits shall be available at all times for inspection by the Union, the Employers and Employees at the principal office of the Annuity Fund.

Section 3. The Annuity Fund shall be valued by the Trustees annually at the market value as of the close of business at the end of the last business day preceding the anniversary date of the Annuity Plan, but the value of any life insurance or annuity contracts shall not be included in such valuation; and in making such valuation, the Trustees may engage the help, and pay the expenses of, such persons as they may select.

-12-

Section 3. TRUSTEES' INSURANCE. The Trustees may authorize the purchase of insurance for themselves collectively and/or individually and for any other fiduciary employed by the Trustees to cover liability or losses occuring by reason of the act or omission of a fiduciary.

Section 4. The Trustees shall be fully protected in acting upon any instrument, certificate, or paper believed by them to be genuine and to be signed or presented by the proper person or persons, and shall be under no duty to make any investigation or inquiry as to any statement contained in any such writing, but may accept the same as conclusive evidence of the truth and accuracy of the statements therein contained.

Section 5. The Trustees shall not be liable for the proper application of any part of the Annuity Fund or for any other liabilities arising in connection with the administration or operation of the Trust Fund, except as herein provided.

Section 6. The Trustees may from time to time consult with the Trust's legal counsel and shall be fully protected in acting and relying upon advice of such counsel.

Section 7. The Trustees may seek judicial protection by any action or proceeding they may deem necessary to settle their accounts or to obtain a judicial determination or declaratory judgment as to any question of construction of the Trust Agreement or instruction as to any question of construction of the Trust Agreement or instruction as to any action thereunder.

Section 8. The costs and expenses of any action, suit, or proceeding brought by or against the Trustees or any of them (including counsel fees) shall be paid from the Trust Fund, except in relation to matters as to which it shall be adjudged in such action, suit or proceeding that such Trustee was acting in bad faith or was grossly negligent in the performance of his duties hereunder.

Section 9. The Trustees shall not be bound by any notice, direction, requisition, advice or request, unless and until it shall have been received by the Trustees at the principal place of business of the Annuity Fund.

-14-

### ARTICLE VIII

#### CLAIMS AND INDIVIDUAL RIGHTS

Section 1. No employee or any person claiming by or through such employee by reason of having been named a beneficiary in a certificate or otherwise, shall have any rights, title or interest in or to the funds or other property of the Annuity Fund or any part thereof, except as specifically provided by the Annuity Plan and the applicable rules and regulations thereunder.

Section 2. No moneys, property or equity of any nature whatsoever in the Trust or Trust Fund or policies or benefits or moneys payable therefrom shall be subject in any manner, by any Employee or person claiming through such Employee, to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, garnishment, mortgage, lien or charge, and any attempt to cause the same to be subject thereto shall be null and void.

### ARTICLE IX

#### INDEMNIFICATION AND PROTECTION OF TRUSTEES AND OTHER PERSONS

Section 1. No successor Trustee shall in any way be liable or responsible for anything done or committed in the administration of the Trust prior to the date they became a Trustee. The Trustees shall not be liable for the acts or omissions of any investment manager, attorney, agent or assistant employed by them in pursuance of this agreement, if such investment manager, attorney, agent or assistant was selected pursuant to this Trust Agreement and such persons performance was periodically reviewed by the Trustees who found such performance to be satisfactory; provided that nothing herein shall relieve any Corporate Trustee of any liability with regard to the performance of its employees.

Section 2. The Trustees, to the extent permitted by applicable law, shall incur no liability in acting upon any instrument, application, notice, request, signed letter, telegram or other paper or document believed by them to be genuine and to contain a true statement of facts, and to be signed by the proper person.

-13-

Section 10. No person, partnership, corporation or association dealing with the Trustees shall be obliged to see to the application of any funds, securities or other property paid or delivered to the Trustees as a purchase price or otherwise or to see that the terms of the Trust have been complied with or be obliged to inquire into the authority of the Trustees or the necessity or expediency of any act of the Trustees and every instrument effected by the Trustees shall be conclusive in favor of any person, partnership, corporation or association relying thereon that (1) at the time of the delivery of said instrument, the Trust was in full force and effect; (2) said instrument was effected in accordance with the terms and conditions of this Trust Agreement; and (3) the Trustees were duly authorized and empowered to execute such instrument.

### ARTICLE X

#### APPOINTMENT, REMOVAL, RESIGNATION AND ADMINISTRATIVE FUNCTIONS OF TRUSTEES

Section 1. The Trustees shall consist of four persons, two persons named by the Union and two persons named by the Employers. The Union Trustees shall be Thomas P. Maguire and James V. Stahl. The Employer Trustees named by the individual Employers are Alfred Gerosa and Theodore King.

The above named Trustees, each for himself, accept their appointment as Trustees and consent to act as Trustee hereunder, and declare and agree that they will receive the terms, conditions and provisions of this Trust Agreement and for the uses, purposes and trusts and with the powers and duties herein set forth and none other.

Section 2. The Trust to be set up by the parties herein shall be known as Annuity Fund of the International Union of Operating Engineers, Local Unions 15, 15A, 15C, 15D, AFL-CIO, and the Trustees may conduct the business of the Trust and execute all instruments in that name. The Chairman of the Board of Trustees shall be selected from the Employer-Trustees of the Board and the Secretary-Treasurer shall be selected from the Union Trustees of the Board.

-15-

Section 3. Each Trustee shall serve until his death, resignation or removal of substitution.

Section 4. A Trustee may resign on giving thirty (30) days' notice in writing to the remaining Trustees.

Section 5. Any Union Trustee may be removed from office at any time by the Union, such removal to be evidenced by an instrument in writing signed by the accredited officers of the Union and delivered to all the Trustees. Any Employer Trustee may be removed from office at any time by the Association or Associations that designated him, such removal to be evidenced by an instrument in writing signed by the accredited officers of such Association or Associations and delivered to all of the Trustees.

Section 6. In case any Trustee who is an Employee representative shall die, resign or be removed, a successor Trustee shall be appointed forthwith by the Union, such appointment to be evidenced by an instrument in writing signed by the accredited officers of the Union. In case any Trustee who is an Employer representative shall die, resign or be removed, a successor Trustee shall be appointed forthwith by the Employers, such appointment to be evidenced by an instrument in writing, signed by the accredited officers of such Employers.

Section 7. A meeting may be called at any time by the Chairman or by any two of the Trustees upon giving five (5) days written notice to all the other Trustees.

Section 8. Any action by the Trustees may be taken either at a meeting or in writing signed by all of the Trustees without a meeting. Concurrence of the respective majorities of each unit of the Union and Employer Trustees shall be required for any action taken at the meeting. All decisions and/or resolutions of the Trustees shall be as aforementioned be by respective majority votes of both Union and Employer Trustees units, and which voting shall be on a unit basis of the respective Union-Employer Trustees groups. All action taken by the Trustees shall be by a quorum of no less than three (3) Trustees.

Concurrence in writing signed by the requisite number of Trustees as aforementioned shall be required for any decisions or other action taken or adopted without a formal meeting.

-16-

### ARTICLE XIV

#### AMENDMENTS

The provisions of this Agreement and Declaration of Trust may be amended by an instrument in writing executed by the Trustees provided there are attached thereto a duly certified copy of a resolution approving such amendment adopted by the general organization of the Union at a regular meeting or at a special meeting called for that purpose, and duly certified copies of resolutions duly approving such amendment, it being expressly understood and agreed that no amendment shall divert any of the Trust Estate than in the hands of the Trustees from the purposes of this Trust.

### ARTICLE XV

#### SAVING CLAUSE

If, for any reason, any provision of this Agreement shall be, is or is hereafter determined by decision, act or regulation of a duly constituted body or authority, to be in any respect invalid, it shall not nullify any of the other terms and provisions of this Agreement, and in such respect or respects as may be necessary to conform this Agreement with the applicable provisions of law in order to prevent the invalidity of such provision or provisions, then the said provision or provisions shall be deemed automatically amended to conform with such rule, law, regulation, act or decision and the parties to this Agreement, shall, in such case, meet and take the necessary and appropriate action, at a duly constituted meeting, to formally adopt and ratify such amendment or amendments to this Agreement and they shall be deemed included herein as though originally contained in and a part of this Agreement from its inception.

IN WITNESS WHEREOF, the Trustees, the Associations and Local Unions 15, 15A, 15C, 15D of the International Union of Operating Engineers, by their proper officers who represented that they were duly authorized to act have executed this instrument to evidence their acceptance of the Trusts hereby created and their agreements to be bound hereby, the day and year first above written.

-18-

Section 9. In the event of a deadlock among the Trustees or any of the affairs of this Trust, an impartial umpire to decide the matter in dispute shall be appointed by consent of all of the Trustees, and if the Trustees have not selected an impartial umpire who has signified his acceptance, within ten (10) days after the deadlock arose, any one or more of the Trustees may petition the United States District Court for the Southern District of New York for the appointment of an impartial umpire to decide such dispute, or for the Court to do so.

### ARTICLE XI

#### TERMINATION OF THE TRUST

In the event that the obligation of the Employers to make Employer contributions shall terminate, or upon any liquidation of the Trust Estate, the Trustees shall continue to apply the Trust Estate to the purposes specified in Article III hereof and none other, and upon the disbursement of the entire Trust Estate this Trust shall terminate.

### ARTICLE XII

#### BONDING

The Trustees and the employees of the Annuity Fund shall each be bonded by a duly authorized surety company in such amounts as may be determined from time to time by the Trustees.

### ARTICLE XIII

#### EXECUTION AND INTERPRETATION

Section 1. This Agreement and Declaration of Trust may be executed in one or more counterparts. The signature of a party on any counterparts shall be sufficient evidence of his execution hereof.

Section 2. The provisions of this Trust Agreement shall be liberally construed in order to promote and effectuate the establishment and operation of the Annuity Program herein contemplated. The Trustees shall have power to interpret, apply and construe the provisions of this Trust Agreement, and any construction, interpretation and application adopted by the Trustees in good faith shall be binding upon the Union, the Employers and the Employees.

UNION TRUSTEE

_Thomas F. Maguire_
THOMAS P. MAGUIRE

_James V. Stahl_
JAMES V. STAHL

EMPLOYER TRUSTEES

_Alfred Genova_
ALFRED GENOVA

_Theodore King_
THEODORE KING

GENERAL CONTRACTORS ASSOCIATION OF NEW YORK, INC.

BY _William Cross_

BUILDING TRADES EMPLOYERS ASSOCIATION

BY _____

THE CEMENT LEAGUE

BY _____

ALLIED BUILDING METAL INDUSTRIES

BY _____

CONSTRUCTION EQUIPMENT RENTAL ASSOCIATION

BY _Robert L. Cates_
PRES. CERA

MASTER CARPENTERS ASSOCIATION

BY _____

BUILDING CONTRACTORS ASSOCIATION

BY _____

-19-

**I.U.O.E. LOCAL 15, 15A, 15C & 15D ANNUITY,**
**WELFARE and APPRENTICESHIP SKILL IMPROVEMENT**
**& SAFETY FUNDS**

## COLLECTION & AUDIT PROCEDURES

### SECTION I

### GENERAL POLICY

This policy is adopted by the Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the International Union of Operating Engineers Local 15, 15A, 15C & 15D, AFL-CIO (collectively the "Local 15 Funds") in order to coordinate the collection of required contributions. However, each Fund reserves the right to proceed independently in the collection of required contributions. It is the policy of the Local 15 Funds to collect all employer contributions as they are due and to make such diligent and systematic efforts as are appropriate under the circumstances to do so. References to a "Fund" shall refer to each individual Local 15 Fund separately.

If an employer ceases to have an obligation to contribute to a Fund under a Fund's Trust Agreement, a collective bargaining agreement ("CBA"), or applicable law, the employer shall remain subject to this Policy with regard to the time period during which the employer was obligated to contribute to the Fund or the Local 15 Funds, collectively.

It is the policy of the Local 15 Funds to collect all employer contributions as they are due, and to make such efforts as are appropriated under the circumstances to do so.

The Trustees of the Local 15 Funds have the legal right to exercise all remedies allowable under the Trust Agreement and the Employee Retirement Income Security Act of 1974, as amended (ERISA), including but not limited to:

      1.    the right to establish that contributions shall become due on the payroll date.

      2.    the right to establish a random audit program;

      3.    the right to audit the financial records of contributing employers, including but not limited to payroll ledgers, federal and state tax returns, IRS Form 941 and such other books and records of the employers necessary in order for the auditor to ascertain if proper contributions have been made, and to give an unqualified opinion;

      4.    the right to require that the delinquent employer pay the cost of the audit, interest, attorneys' fees and other expenses incurred by the Local 15 Funds

in determining the amount of the delinquency and in the collection of such delinquency;

5.      the right to collect liquidated damages;

6.      the right to require a bond or a cash deposit as security for prompt future payments due from an employer that has been habitually delinquent in its contributions to a Fund or the Local 15 Funds, collectively; and

7.      the right to take all other steps and to perform all other acts that are necessary in order to collect contributions due the Local 15 Funds in a timely and expeditious manner.

The procedures set forth herein shall be followed unless the Board of Trustees determines that they should be waived in a particular instance.

All questions or disputes relating to the interpretation, meaning and/or application of this Policy shall be finally and exclusively resolved by the Board of Trustees in the exercise of their discretion and in the performance of their fiduciary obligations to the Local 15 Funds' participants and beneficiaries, for the protection of the financial integrity and soundness of the Local 15 Funds, and the efficient and effective administration of the Local 15 Funds.

## SECTION II

## ADMINISTRATIVE PROCEDURE

In accordance with the provisions of the applicable Trust Agreements and the above general policy declaration, the following administrative steps shall be taken to effectuate the collection of delinquent contributions.

1.      The Fund Office will maintain a list of all employers that are bound to a collective bargaining agreement with the Union.

2.      Employers shall make fringe benefit contributions by the purchase of a consolidate stamp from the Fund Office. Said stamps shall be placed in the employees' weekly pay envelopes, and shall be remitted to the Fund Office three (3) times per year: March and April, July and August, November and December. Further, pursuant to the terms of the applicable CBA, each Employer is required to submit a report of hours worked by its employees, along with the names and social security numbers of said employees. In the event a member/employee informs the Fund Office, Trustee or Union Representative that he has not received his stamps in his weekly pay envelope, or the information contained on the Employers hours worked report discloses a deficiency, then the Local 15 Funds shall consider the Employer to be delinquent and the Fund Administrator shall cause a delinquency notice to be sent via first class mail to the delinquent Employer. The notice shall advise the Employer that the

contributions must be received within ten (10) days of the date of the notice so as to avoid interest, legal fees and penalties.

3.      Interest shall accrue on delinquent contributions from the due date at the prime rate, plus one percent.

4.      If an employer has not made the remittance within ten (10) days from the date of the Notice, the Fund Administrator shall refer the matter to the Funds' legal counsel for collection.

5.      Legal Counsel shall follow procedures set forth in Section III of this Policy Statement.

6.      If an employer pays the principle amount of the delinquency but does not pay accrued interest and/or any other amounts owed, acceptance of the principal amount shall not constitute a waiver of the Local 15 Fund's claim for accrued and unpaid interest and/or any other amounts.

## SECTION III

### LEGAL ACTION AND SETTLEMENT

1.      When a collection matter has been referred to the Local 15 Funds' legal counsel the Fund Administrator shall forward to counsel the following documents so that he shall be able to send a lawyer's demand for payment letter:

        a.      a signed copy of the CBA;
        b.      name and address of the employer;
        c.      the amount due in contributions and the cost of audit; and
        d.      a copy of any audits performed.

2.      In the event that an employer fails to pay the delinquent contributions and interest within ten (10) days after legal counsel's demand for payment, legal counsel shall initiate suit to recover the delinquency unless counsel recommends a different course of action based upon pertinent factors which shall include, but are not limited to, the following:

        a.      the amount of the delinquency;

        b.      the length of time the delinquent amount has been owed;

        c.      the financial condition of the employer;

        d.      the employer's past performance as a contributing employer; and/or

e.    any other factor that, in the discretion of legal counsel, may have a material bearing on the collection of the delinquent contributions.

3.    Settlements calling for payments over time must be in writing and signed on behalf of the Local 15 Funds and the employer. Such settlement must include the requirement to employer contributions on a timely basis and shall include appropriate interest paid at 1%

4.    The Board of Trustees maintains the discretion not to commence a lawsuit if doing so would not be in the best interests of the Local 15 Funds.

5.    The Board of Trustees reserves the right to accept or reject an employer's proposal regarding any delinquent contributions, interest, liquidated damages, and attorneys' fees over a period of time and to compromise any claim or delinquent account as recommended by legal counsel.

6.    Notwithstanding the procedures set forth in this Policy, the Board of Trustees may refer any delinquent account to legal counsel at an earlier or later date than provided for herein when circumstances warrant that collection action be initiated forthwith.

7.    Legal counsel and the Fund Administrator shall keep the Board of Trustees apprised of the status of these matters.

## SECTION IV

## PAYROLL AUDIT POLICY

1.    The Board of Trustees shall have discretion in determining which employers will be audited in each year. Each employer shall generally be audited at least once during a three (3) year period. All employers shall be audited at least once during a five (5) year period, such period to commence from the date of the last audit of the employer, or in cases where from the date of the last audit of the employer, or in cases where an employer has not previously been audited, from the date the employer first became a participating employer in the Local 15 Funds. Each new employer shall be audited within the first year of its participation.

2.    The Trustees may conduct an audit of any participating employer in accordance with the procedure set forth in the applicable CBA, whenever the Trustees resolve that the circumstances warrant such audit.

3.    Notwithstanding the guidelines of this Section, the Trustees may, in the exercise of their discretion, determine that the audit schedule set forth above should not be followed in a particular instance.

4.    Prior to conducting each audit, a Fund auditor shall notify the Fund Administrator and review the employer's CBA and any pending issues. The Fund auditor will forward a letter to the employer advising it of the impending audit, citing the Trustees' authority to conduct the audit and describing the records required.

5.    In the event that to conduct an audit, the Trustees' authorized representative must travel more than 100 miles from the Fund Office location in New York City, the employer shall be required to reimburse the Local 15 Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds for the cost of the audit, including travel and lodging, regardless of whether or not a fringe benefit deficiency is scheduled in the final report issued by the authorized representative for the Trustees. The above shall only be applied after the employer has been provided, in written notices ten (10) days apart, that it may satisfy its requirement of producing the necessary records by forwarding them via express mail delivery to the Trustees' authorized representative.

6.    Upon issuance of the Fund auditor's final report, the Funds' legal counsel shall send a letter to the employer demanding payment of any amounts found to be due by the auditor. In the event that the employer refuses to pay said amount found due and owing, the matter shall be referred to legal counsel.

7.    In the event an employer refuses to permit an audit upon request by the Trustees, or if the employer refuses the Fund auditor access to pertinent records, then the Local 15 Funds' auditor shall refer the matter to legal counsel. Legal counsel shall thereafter demand in writing that the employer make available such books and records as are necessary for the Fund auditor to conduct an audit. If the records are still not made available, legal counsel shall institute legal action to enforce the Trustees' right to conduct a payroll audit and the employer shall pay to the Funds all costs and attorneys' fees incurred as a result of the employer's refusal to permit an audit or refusal to make available all pertinent records.

Approved:    June 28, 2001
Amended:    April 19, 2007

EXHIBIT "E"

## HOURS EXPENDED BY COUNSEL

3/18/2008

JMS   Drafted, revised and finalized Summons
and Complaint to compel audit;
Prepared civil cover sheet and
Rule 7.1 Statement to be filed with
court                                                    2.5 hours

4/18/2008

JMS   Prepared Summons and Proof of
Service for ECF Filing                          0.25 hours

4/30/2008

JMS   Prepared Default Judgment Motion
for filing and service on Defendant       3.0 hours
                                                           _____

Total:                                                    5.75 hours